UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CORTEZ N. MEADOWS,              )
                                )
    Plaintiff,               )
                                )
v.                              )    Case No. CIV-17-226-G
                                )
CITY OF OKLAHOMA CITY et al.,   )
                                )
    Defendants.              )

## OPINION AND ORDER

This matter comes before the Court on Defendant City of Oklahoma City's Motion for Summary Judgment (Doc. No. 66). Plaintiff has responded[1] in opposition to the Motion (Doc. Nos. 83, 88-1), and Defendant City has replied (Doc. No. 85). Having considered the parties' arguments, the relevant record, and the governing law, the Court grants Defendant City's Motion.

### BACKGROUND

This civil rights action arises out of Plaintiff's arrest and subsequent twenty-hour detention for allegedly driving under the influence of alcohol. Plaintiff filed his suit under 42 U.S.C. § 1983, asserting violations of his Fourth and Fourteenth Amendment rights, as

---

[1] Plaintiff's initial Response, Doc. No. 83, was untimely filed. Rule 7.1(g) of the Local Civil Rules for this Court states in part that "[a]ny motion that is not opposed within 21 days may, in the discretion of the court, be deemed confessed." LCvR 7.1(g). The Court has previously advised Plaintiff on two separate occasions of the consequences of failing to respond or reply to a motion within the time prescribed in Local Civil Rule 7.1. *See* Order of May 2, 2017 (Doc. No. 12) (Miles-LaGrange, J.); Order of September 20, 2018 (Doc. No. 76). Though the Court accepts Plaintiff's Response, as amended, for purposes of this Order, Plaintiff is advised that the Court will strike any future submissions that fail to comply with this Court's deadlines under LCvR 7.1.

well as pendant state-law claims. *See* Compl. (Doc. No. 1). Plaintiff brings these claims against Defendant City of Oklahoma City (the "City") and Oklahoma City Police Department ("OCPD") officer Kristopher Gellenbeck in both his individual and official capacities. *See id.* at 2. On June 6, 2017, the Court granted Defendant City's Motion to Dismiss Plaintiff's official-capacity claims against Defendant Gellenbeck and all state-law claims against Defendant City insofar as they were alleged solely under the Oklahoma Constitution rather than pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"). *See* Order of June 6, 2017 (Doc. No. 18) (Miles-LaGrange, J.).

## STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for

2

the nonmovant." *Adler*, 144 F.3d at 671 (citation omitted). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

UNDISPUTED FACTS[2]

In its Motion, Defendant City set out the following eleven material facts related to Plaintiff's arrest and three material facts related to OCPD officer training. *See* Mot. Summ. J. (Doc. No. 66) at 1-5.[3] Plaintiff did not present any additional facts that he contends are

---

[2] All material facts relied upon in this Order are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff, as the nonmovant.

[3] Citations to page numbers herein use the CM/ECF pagination.

preclusive of judgment as a matter of law.  *See* LCvR 56(c).

On March 26, 2016, the OCPD 911 call center received a call that a female was being held against her will in a hotel room by a male with a gun.  *See* Mot. Summ. J. at 1-2 (citing Doc No. 32-7).  At approximately the same time, the OCPD 911 call center received a call that a male carrying an AK-47 had left the hotel with a woman and that they had gotten into a red Honda Accord with tag number 352LFO or 352LFD.  *See id.* at 2 (citing Doc. No. 47-2).  Plaintiff does not dispute that the 911 call center received these two calls but objects that the Court should disregard the calls as inadmissible in evidence.  *See* Pl.'s Resp. at 1-4; Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  Plaintiff also disputes that the second caller saw Plaintiff leave the hotel with a gun.  *See* Pl.'s Resp. at 4.

OCPD Officer Maldonado observed the vehicle on the highway and made a traffic stop.  *See id.*; Doc. No. 47-3 at 4.  Defendant Gellenbeck arrived as Plaintiff was being "called" from the driver's seat.[4]  *See id.*  Defendant Gellenbeck observed that Plaintiff's eyes were bloodshot and watery and that Plaintiff's speech was slow and slurred.  *See id.* (citing Doc. No. 47-3 at 2).  Defendant Gellenbeck also observed that Plaintiff was very unsteady on his feet when he stood and walked.  *See id.*  Defendant Gellenbeck initiated a

---

[4] The incident reports cited by Defendant City in its Motion demonstrate that the female passenger told the officers that Plaintiff was a friend who had offered to take her home from the hotel and that Plaintiff was not holding her against her will.  *See* Mot. Summ J. at 2 (citing Doc. No. 47-3); Doc. No. 47-3 at 5, 6, 9.

field sobriety test but did not complete the test due to the cold and very windy weather.[5] *See id.* at 3. Defendant Gellenbeck placed Plaintiff under arrest on state charges of driving under the influence of alcohol in violation of Okla. Stat. tit. 47, § 11-902, as well as possession of a firearm while intoxicated, *see* Okla. Stat. tit. 21, § 1289.9, transporting an open container of beer, *see* Okla. Stat. tit. 21, § 1220, and driving with a revoked and suspended license, *see* Okla. Stat. tit. 47, § 6-303.B.[6] *See* Mot. Summ. J. at 3; Doc. No. 47-3 at 1.

Defendant Gellenbeck prepared an affidavit of probable cause for Plaintiff's arrest, in accordance with OCPD Procedure, which was approved and signed by an Oklahoma County District Court judge. *See* Mot. Summ. J. at 3 (citing Mot. Summ. J. Ex. 10 (Doc. No. 66-2)). Defendant City notes that this procedure is Defendant City's attempt to comply with the requirements prescribed in *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), for the extended detention of individuals arrested without a warrant. *See id.* While the Oklahoma County District Attorney's Office filed charges against Plaintiff, the charges were subsequently dismissed. *See id.* at 3-4 (citing Doc. No. 47-1).

Regarding OCPD officer training and Defendant Gellenbeck's training pursuant to OCPD policies, Defendant City states that Defendant Gellenbeck attended the OCPD

---

[5] Plaintiff disputes that Defendant Gellenbeck performed field sobriety tests but cites no evidence in support. Pl.'s Mot. at 7; Fed. R. Civ. P. 56(c), (e).

[6] Plaintiff was also arrested on corresponding municipal violations. *See* Mot. Summ. J. at 3; Doc. No. 47-3 at 1.

Recruit Training Academy from September 27, 2013, to April 23, 2014. *See id.* at 4-5. This training included the areas of "laws of arrest" and the requirement of probable cause. *See id.* (citing Mot. Summ. J. Ex. 12 (Doc. No. 66-4)). After completion of the training program, Defendant Gellenback was placed in OCPD's Field Training and Evaluation Program for four months, as are all OCPD recruits pursuant to OCPD policy. *See id.* at 5. Finally, OCDP policy requires officers to face a Probation Review Board at the end of ten months of employment. *See id.* The purpose of the Probation Review Board is to evaluate the performance of new hire recruits nearing the end of their probationary period to determine whether the recruit should be granted permanent status, given an extended probationary period, or terminated from employment. *See id.*; *id.* Ex. 15 (Doc. No. 66-7).

ANALYSIS

A. *Plaintiff's Fourth Amendment Claim Against Defendant City*

In his Complaint, Plaintiff states that he was "wrongfully seized and imprisoned for 20 hours without probable cause" in violation of both the Fourth and Fourteen Amendments. Compl. at 1. Because Plaintiff's claims are predicated solely on his arrest and his subsequent twenty-hour detention, which occurred prior to a judge's probable cause determination, *see* Compl. at 1, 4, they implicate the Fourth Amendment, which "establishes the minimum standards and procedures not just for arrest but also for ensuing detention" and "governs a claim for unlawful pretrial detention even beyond the start of legal process." *Manuel v. City of Joliet*, 137 S. Ct. 911, 917, 920 (2017) (internal quotation marks omitted) (quoting *Gerstein*, 420 U.S. at 111); *see also Gadd v. Campbell*, 712 F. App'x 796, 799-800 (10th Cir. 2017); *Young v. Davis*, 554 F.3d 1254, 1257 (10th Cir.

6

2009) (explaining that an individual arrested without a warrant becomes held "pursuant to legal process" upon the probable cause determination by a judicial officer).[7]

Municipal liability requires two distinct findings: that the plaintiff's federal rights were violated and that the municipality "is responsible for that violation." *Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992). A municipality cannot be held liable for the unconstitutional conduct of its employees under a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010). Rather, a municipality is liable under § 1983 only where the employee's unconstitutional conduct occurred while he was carrying out a policy or custom established by the municipality, and there is a direct causal link between the policy or custom and the injury alleged. *See Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

A municipal policy or custom required to support § 1983 municipal liability may take the form of one of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such

---

[7] Defendant City argues that while the Complaint references both the Fourth and Fourteenth Amendments, the substance of Plaintiff's § 1983 claim—i.e., the allegation of arrest and detention without probable cause—implicates only the Fourth Amendment. *See* Mot. Summ. J. at 5. To whatever extent Plaintiff seeks to raise an independent Fourteenth Amendment claim based upon his arrest and subsequent detention, the Court agrees that Defendant City is entitled to summary judgment on the claim. *See*, *e.g.*, Compl. at 5 (stating that his due process rights were violated).

final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson*, 627 F.3d at 788 (alteration and internal quotation marks omitted) (quoting *Brammer-Hoelter*, 602 F.3d at 1189-90). The Tenth Circuit has explained the evidence required to establish deliberate indifference:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Bryson*, 627 F.3d at 789 (internal quotation marks omitted) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)).

In his Complaint, Plaintiff bases his municipal liability claim on conclusory allegations that Defendant City failed to adequately "discipline, train or otherwise direct police officers concerning the rights of citizens." Compl. at 6. The Court finds that Plaintiff has not made the required showing with respect to these contentions.

First, as to Plaintiff's contention of inadequate discipline, the Tenth Circuit has stated: "Rarely if ever is 'the failure of a police department to discipline in a specific instance . . . an adequate basis for municipal liability under *Monell*.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 777 (10th Cir. 2013) (omission in original)

8

(quoting *Butler v. City of Norman* 992 F.2d 1053, 1056 (10th Cir. 1993)). Even if the Court were to assume that Defendant Gellenbeck violated Plaintiff's constitutional rights, Plaintiff has presented no materials indicating that Defendant City had a custom or policy of "ignor[ing] police misconduct," much less that such a policy of inaction was effected with deliberate indifference. *Trujillo v. Campbell*, No. 09-cv-03011-CMA-KLM, 2012 WL 3609747, at *7 (W.D. Okla. Aug. 22, 2012); *see Butler*, 992 F.2d at 1055 ("[W]e cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*." (internal quotation marks omitted)).

Second, as to Plaintiff's contention of a failure to train or "otherwise direct" Defendant Gellenbeck, a failure to adequately train police officers may serve as a basis for § 1983 municipal liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see Brammer–Hoelter*, 602 F.3d at 1190. Evidence that police officers violated certain policies is not, without more, sufficient to show the officers were inadequately trained; instead, "a municipality's failure to train 'must reflect a deliberate or conscious choice by the municipality.'" *Zuniga v. City of Midwest City*, 68 F. App'x 160, 165 (10th Cir.2003) (quoting *Barney*, 143 F.3d at 1307). Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . , unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Butler*, 992 F. 2d at 1055.

Plaintiff does not dispute Defendant City's factual statements regarding OCPD

officer training. These undisputed facts and the materials cited in their support show that Defendant Gellenbeck and other OCPD officers were required to participate in specific training for several months upon their entrance into the OCPD, including training on subjects relevant to the circumstances of this case. *See* Mot. Summ. J. at 4-5; *id.* Ex. 13 (Doc. No. 66-5) at 1; *id.* Ex. 14 (Doc. No. 66-6) at 1. The training materials cited by Defendant City include the subject of the Fourth Amendment, the necessity of probable cause prior to a warrantless arrest, and the definition of probable cause. *See id.* Ex. 12 (Doc. No. 66-4) at 1-7; *id.* Ex. 16 (Doc. No. 66-8) at 1-5. Further, Defendant City's undisputed fact statements and cited materials demonstrate that the OCPD has a policy of determining each recruit's preparedness and competency prior to granting them permanent status as an OCPD officer. *Id.* Ex. 15 (Doc. No. 66-7) at 1.

The undisputed facts also show that the OCPD has a policy of requiring OCPD officers to complete a probable cause affidavit after a warrantless arrest. *See* Mot. Summ. J. at 3; *id.* Ex. 10 at 1. Pursuant to this policy, Defendant Gellenbeck completed a probable cause affidavit upon Plaintiff's arrest, and the affidavit was then brought before a judge for a judicial determination of probable cause, in compliance with constitutional requirements for extended detention following a warrantless arrest, as articulated in *Gerstein* and *County of Riverside*. *See* Mot. Summ. J. at 3 (noting that this procedure is Defendant City's "attempt to comply with the U.S. Supreme Court's opinions in *Gerstein v[.] Pugh*, 420 U.S. 103 (1975) and *County of Riverside v[.] McLaughlin*, 500 U.S. 44 (1991)" for continued detentions following warrantless arrests); *Gerstein*, 420 U.S. at 114 ("[W]e hold that the Fourth Amendment requires a judicial determination of probable cause as a

prerequisite to extended restraint of liberty following arrest."); *Cty. of Riverside*, 500 U.S. at 58 (finding a 48-hour period between arrest and judicial determination of probable cause constitutionally permissible under the Fourth Amendment).

Defendant City's undisputed and properly supported material facts illustrate that OCPD training was neither deficient nor the direct cause of Plaintiff's alleged constitutional violation. The training materials and procedures reflect no dereliction on the part of Defendant City to train officers in specific skills related to arrests without warrants or to ensure that an arrestee's pretrial detention comports with the requirements of the Fourth Amendment. Thus, the undisputed facts show that Defendant City did not fail to adequately train OCPD officers and did not act with deliberate indifference to Plaintiff's constitution rights. *See City of Canton*, 489 U.S. at 392.

Accordingly, the Court grants summary judgment in Defendant City's favor as to Plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983.

B. *Plaintiff's State Law Claims Against Defendant City*

Plaintiff raises four claims against Defendant City pursuant to the Oklahoma Governmental Tort Claims Act, including state-law claims of intentional infliction of emotional distress, malicious prosecution, false arrest, and false imprisonment. *See* Compl. at 6.

 a. <u>Intentional Infliction of Emotional Distress and Malicious Prosecution</u>

Defendant City contends that, as a political subdivision of the state, its liability on state-law tort claims is governed by the Oklahoma Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, §§ 151 et seq., and that under the OGTCA it may only be

11

liable for torts committed by employees acting within the scope of their employment. *See* Mot. Summ. J. at 13-14; *See* Okla. Stat. tit. 51, §§ 152(11)(a), 152.1. Because the OGTCA defines "scope of employment" as the employee's good faith performance of his or her duties, 51 Okla. Stat. § 152(12), Defendant City asserts that an employee cannot commit the tort of intentional infliction of emotional distress while acting within the scope of employment. *See* Mot. Summ. J. at 14-15.

The OGTCA immunizes a governmental entity falling under the OGTCA "when, in order to prevail on the particular tort claim sued upon, a plaintiff is required, as a matter of law, to show conduct on the part of a governmental employee that would mandate a determination the employee was not acting in good faith." *Fehring v. State Ins. Fund*, 19 P.3d 276, 283 (Okla. 2001) (emphasis omitted), *overruled on other grounds by Gowens v. Barstow*, 364 P.3d 644 (Okla. 2015). Thus, when a tort cause of action "requires proof of an element that necessarily excludes good faith conduct on the part of governmental employees, there can be no liability against the governmental entity in a GTCA-based suit." *Id.*

Under Oklahoma law, the tort of outrage or intentional infliction of emotional distress cannot be committed by an individual acting in good faith. *See Gowens*, 364 P.3d at 651; *McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Ct. App. 1996) (cited with approval in *Fehring*, 19 P.3d at 283-84); *see also Willett v. Bd. of Cty. Comm'rs of Cty. of Okla.*, No. CIV-08-0026-HE, 2008 WL 11422076, at *1 (W.D. Okla. Mar. 27, 2008) (dismissing intentional infliction of emotional distress claim against City of Oklahoma City brought under the OGTCA because such claim required a showing of bad faith).

Accordingly, the Court finds that summary judgment is appropriate on this claim.

For substantially the same reason, the Court finds that Plaintiff's malicious prosecution claim—which was not directly challenged in Defendant's Motion—should be dismissed. Malicious prosecution "requires, as elements to be proven, lack of probable cause and malice." *Craig v. City of Hobart*, No. CIV-09-0053-C, 2010 WL 680857, at *3 n. 7 (W.D. Okla. Feb. 24, 2010) (internal quotation marks omitted) (quoting *Parker v. City of Midwest City*, 850 P.2d 1065, 1068 (Okla. 1993)). "These two elements necessarily include some degree of bad faith." *Parker*, 850 P.2d at 1068. The Oklahoma Supreme Court has explained:

> [A plaintiff] cannot recover damages from Defendant City on the theory of malicious prosecution. If [the officer's] actions were in bad faith[,] he was acting outside his scope of employment, and thus Defendant City is not liable. If, however, [the officer] was acting in good faith and hence within the scope of employment, [the plaintiff] cannot prove his case because he cannot establish the necessary element of malice.

*Id.* at 1068 (citation omitted). For this reason, Plaintiff's claim is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(iii). *See* Order of March 16, 2017 (order granting Plaintiff's application to proceed *in forma pauperis*).

b. False Arrest and False Imprisonment

Defendant City next contends that it is entitled to judgment on Plaintiff's state-law claims of false arrest and false imprisonment because the undisputed facts show that Defendant Gellenbeck had probable cause[8] to arrest Plaintiff for driving under the

---

[8]On March 21, 2017, a hearing officer for the Commissioner of the Oklahoma Department of Public Safety ("DPS") issued an order vacating the March 26, 2016, order of revocation of Plaintiff's driver's license. *See* Pl.'s Resp. Ex. 4 (Doc. No. 83-4) at 2. In the order, the

influence of alcohol. *See* Mot. Summ. J. at 13-14.

Under Oklahoma law, "When the unlawful detention is caused by an individual acting under authority of law, it gives rise to a claim for false arrest rather than false imprisonment." *Craig v. City of Hobart*, No. CIV-09-0053-C, 2010 WL 680857, at *3 (W.D. Okla. Feb. 24, 2010) (citing *King v. Okla. City*, No. CIV-06-1308-M, 2007 WL 1519014, at *1 n.4 (W.D. Okla. May 21, 2007)). Conversely, false imprisonment is described under Oklahoma law as "purely a matter between private persons for a private end, [with] no intention of bringing the person detained before a court, or of otherwise securing the administration of the law." *Delong v. State ex rel. Okla. Dep't of Pub. Safety*, 956 P.2d 937, 938 (Okla. 1998) (internal quotation marks omitted). Because Defendant Gellenbeck, as an OCPD officer, was acting under authority of law at the time of Plaintiff's arrest, summary judgment with respect to Plaintiff's false imprisonment claim is granted.

Under Oklahoma law, the tort of false arrest "is the unlawful restraint of an

---

hearing officer stated that there was insufficient evidence to establish the issues required for revocation. *See id.* Plaintiff argues that this order has a preclusive effect on the Court's probable cause inquiry. *See* Pl.'s Resp. at 9-12. Plaintiff also appears to suggest elsewhere in his Response that the state court's dismissal of the criminal charges against Plaintiff likewise has preclusive effect on the Court's probable cause inquiry. *See id.* at 5-6. These arguments are unavailing. "Under Oklahoma law, once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the issue in a suit brought upon a different claim." *McFarland v. Childers*, 212 F.3d 1178, 1185 (10th Cir. 2000) (internal quotation marks omitted). Here, neither the DPS's order nor the District Attorney's motion to dismiss addressed the issue of probable cause, but instead stated that there was a lack of sufficient evidence. *See* Doc. Nos. 83-3, 83-4. Moreover, neither Defendant City nor Defendant Gellenbeck was a party to—or in privity with a party to—the DPS proceeding or Plaintiff's state-court proceeding. *See, e.g.*, *McFarland*, 212 F.3d at 1185-86 (police officers in their individual capacities are not in privity with the state); *Adams v. Garvin Cty. Bd. Of Cty. Comm'rs*, No. CIV-14-1337, 2016 WL 5173395, at *5 (W.D. Okla. Sept. 21, 2016).

individual against his will." *Delong*, 956 P.2d at 938 (internal quotation marks omitted). The only element required to maintain a false arrest claim under Oklahoma law is that the arrest was made without probable cause. *Gouskos v. Griffith*, 122 F. App'x 965, 970 (10th Cir. 2005) ("The common-law tort of false arrest has a single element in Oklahoma: that the defendant-officer arrested the plaintiff without probable cause.").[9]

Subsection (A)(2) of title 47, section 11-902 of the Oklahoma Statutes provides, in relevant part: "It is unlawful and punishable . . . for any person to drive, operate, or be in actual physical control of a motor vehicle within this state . . . , who . . . [i]s under the influence of alcohol." Okla. Stat. tit. 47, § 11-902(A)(2). Defendant City cites Defendant Gellenbeck's incident report to show that directly prior to arresting Plaintiff, Defendant Gellenbeck observed Plaintiff to be the driver of the vehicle and observed several indicia of Plaintiff's alcohol consumption. *See* Mot. Summ. J. at 2.

The Court notes, however, that there are differences between the description given by Defendant Gellenbeck in the incident report versus the description given in a probable cause affidavit. In his incident report, Defendant Gellenbeck wrote:

> A traffic stop was initiated at 5500 N Western and I arrived as the driver, later identified as [Plaintiff], was being called from his car. He was told to lay on the ground and I placed handcuffs on him and detained him in the backseat of a patrol vehicle while the vehicle was cleared. As I patted [Plaintiff] down and placed him in the backseat of a patrol car I observed a very strong odor of alcoholic beverage on his breath as he spoke.
> . . . .

---

[9] Unlike the state-law claims of intentional infliction of emotional distress and malicious prosecution, the tort of false arrest can be committed in good faith under Oklahoma law. *Craig*, 2010 WL 680857, at *3; *see also Overall v. State ex rel. Dep't of Pub. Safety*, 910 P.2d 1087, 1091 (Okla. Ct. App. 1995). Thus, Defendant City is not immune from the claim under the OGTCA.

15

> In plain view there was an AR style .22 caliber rifle laying in the driver's seat with the muzzle pointed down to the floorboard. The rifle was magazine loaded, with no round in the chamber.
>
> I had [Plaintiff] step out of the patrol car and asked him how much he had to drink. [Plaintiff] said, "I had one beer." [Plaintiff] had bloodshot, watery eyes and had slow, slurred speech. I observed in [Plaintiff] a lack of smooth pursuit in both eyes, distinct and sustained nystagmus at maximum deviation in both eyes, and the onset of nystagmus prior to 45 degrees in both eyes. [Plaintiff] was very unsteady on his feet as he stood and walked. Because of the nature of the call and the cold, very windy weather I stopped any standard field sobriety tests.[10]
>
> [Plaintiff] was placed under arrest and read implied consent at 0412 hours . . . .
>
> A check . . . revealed [Plaintiff's] license is both revoked and suspended. In the console of the vehicle was a cup of beer and a bottle of Budweiser beer both partially full and cool to the touch.

Doc. No. 47-3 at 2; *see* Mot. Summ. J. at 2-3 (citing Doc. No. 47-3). Thus, the incident report reflects that Defendant Gellenbeck arrested Plaintiff only after observing: (1) Plaintiff to be the driver of a vehicle; (2) Plaintiff's breath to have a strong odor of alcohol; (3) Plaintiff's eyes to be bloodshot and watery; (4) Plaintiff's speech to be slow and slurred; (4) Plaintiff to be unsteady on his feet as he stood and walked; (5) nystagmus and a lack of smooth pursuit in both Plaintiff's eyes; and (5) Plaintiff's admission to consuming alcohol.[11]

---

[10] While the undisputed facts show that Defendant Gellenbeck was unable to complete all field sobriety tests due to inclement weather, Defendant Gellenbeck observed nystagmus and a lack of smooth pursuit in both eyes, which are indicia of intoxication relevant to a Horizontal Gaze Nystagumus field sobriety test, as well as Plaintiff's unsteadiness when walking, which is indicia of intoxication relevant to a "Walk and Turn" field sobriety test. *See, e.g., Guthrie v. Hall*, No. CIV-16-1148-D, 2018 WL 6059395, at *1, 7 (W.D. Okla. Nov. 19, 2018).

[11] The Tenth Circuit has found that probable cause existed in similar circumstances. *See, e.g., Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (holding that an officer had probable cause to arrest a driver for driving under the influence when he observed "a moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and

Defendant City also cites in its Motion Defendant Gellenbeck's probable cause affidavit, which was submitted to a judge after the warrantless arrest for a judicial probable cause determination. *See* Mot. Summ. J. at 3 (citing Doc. No. 47-1); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). In this affidavit, Defendant Gellenbeck stated:

> On 3-26-16 at approximately 0330 hours I responded to NW 39th and May in reference to a female saying she was being held against her will. At the same time another call came in as a male walking to a red vehicle with tag #352LFO carrying a rifle with a white female passenger. Other officers observed the vehicle getting onto I-44 east bound from May. The vehicle continued East on I-44 until other officers arrived to assist. The vehicle exited on Western Ave and turned north. A traffic stop was initiated at NW 55th and Western in OKC in Oklahoma County. I arrived as the driver, [Plaintiff], was being called out of his vehicle. I placed [Plaintiff] under arrest and he was detained in the backseat of a patrol car while his vehicle was cleared. The front seat passenger was the female being held against her will at NW 39th and May and said [Plaintiff] came and picked her up. As I spoke to [Plaintiff] I observed him to have slow, slurred speech and a strong odor of alcoholic beverage on his breath as he spoke. He also exhibited nystagmus in both eyes. [Plaintiff] was very unsteady on his feet as he stood and walked. The rifle was a .22 caliber rifle and was sitting in the driver's seat with the muzzle down in the floorboard with the magazine loaded. In the console of the vehicle was a cup of beer and a bottle of Budweiser beer both partially full and cool to the touch. A check of [Plaintiff's] license status

---

deliberate speech, and slow hand movements," and the driver refused to take a field sobriety test); *Titus v. Ahlm*, 297 F. App'x 796, 798-800 (10th Cir. 2008) (holding that it was "clear" an officer possessed probable cause to arrest a driver for driving under the influence of alcohol where the driver smelled of alcohol, had watery and blood-shot eyes, admitted to having drunk beer, and performed poorly on two of several field sobriety tests); *United States v. Chavez*, 660 F.3d 1215, 1224 (10th Cir. 2011) (admission of consuming alcohol, bloodshot and watery eyes, and failed sobriety tests were sufficient to establish probable cause); *see also Sherbrooke v. City of Pelican Rapids*, 577 F.3d 984 (8th Cir. 2009) (holding that an officer had probable cause to arrest for driving under the influence of alcohol based upon the driver's breath, the driver's admission to drinking, and the driver's failure of the "eye test," one of three field sobriety tests).

though OLETS revealed his license is suspended and revoked.

Doc. No. 47-1 at 3-4. This version of the incident suggests that Defendant Gellenbeck arrested Plaintiff immediately upon arriving at the scene and prior to observing any indications of intoxication or alcohol consumption, discovering the open containers, or learning that Plaintiff's license was suspended and revoked.

The difference in these accounts arguably changes the point at which the investigatory "stop" of Plaintiff, of the kind allowed under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, matured into an arrest—particularly if credit is given to Defendant Gellenbeck's stated views of when he made the arrest. The Court finds, however, that the difference is not material because under either account Defendant City is entitled to summary judgment.

The Court assumes that the act of handcuffing Plaintiff and securing him in the backseat of a patrol car constituted an arrest and not a mere investigatory stop.[12] The undisputed material facts common to both accounts show that at *this* time Defendant Gellenbeck had a reasonable belief, based on the 911 calls, that Plaintiff had committed and was presently committing the felony crime of kidnapping in violation of title 21,

---

[12] The Oklahoma Court of Criminal Appeals has held that an investigatory stop may include, without becoming an arrest, the acts of removing a driver from his car and handcuffing him. *See Alverson v. State*, 983 P.2d 498, 507-08 (Okla. Cr. App. 1999) ("Contrary to Alverson's claim, he was not under arrest, but rather under investigative detention when officers removed him from the car and handcuffed him. . . . He had not been detained for an unreasonable amount of time before . . . facts, which gave officers every right to arrest him, came to light."). Nevertheless, the Court here assumes that handcuffing Plaintiff and placing him in a presumedly locked patrol car is an exercise of control sufficient to constitute an arrest.

section 741 of the Oklahoma Statutes. *See Shaw v. City of Okla. City*, 380 P.3d 894, 901 (Okla. Civ. App. 2016) (granting summary judgment in favor of city on false arrest claim when police arrested plaintiff based on reasonable belief that he had committed or was committing a felony). Under the undisputed material facts common to both accounts, it was just a short time later that Defendant Gellenbeck learned that Plaintiff's passenger was not being held against her will—but by that time Gellenbeck had discovered other facts, including Plaintiff's physical manifestations of intoxication, that justified the arrest on other grounds. The difference in the two accounts is, therefore, not material to the question of whether there existed probable cause to support Plaintiff's arrest.

## CONCLUSION

Based upon the foregoing, the Court GRANTS Defendant City's Motion for Summary Judgment (Doc. No. 66). Additionally, the Court dismisses Plaintiff's state-law claim of malicious prosecution against Defendant City pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

IT IS SO ORDERED this 29th day of March, 2019.

_____
CHARLES B. GOODWIN
United States District Judge